[Civ. No. 61988. Second Dist., Div. Two. Dec. 30, 1981.]

ROOFERS LOCAL NO. 36, Plaintiff and Respondent, v. PREMIER ROOF CO., INC., Defendant and Appellant.

**COUNSEL**

Russell W. Bledsoe for Defendant and Appellant.

Chapman & Rosen and William S. H. Chapman for Plaintiff and Respondent.

OPINION

ROTH, P. J.—Pursuant to a collective bargaining agreement entered into on December 12, 1977, between appellant Premier Roof Co., Inc. and respondent Roofers' Local No. 36, a letter notice was sent on March 24, 1979, by the joint labor relations board to appellant, advising it that it appeared to be in violation of the agreement, in that it had failed to submit certain fringe benefit contributions due to a designated trustee, and citing it to appear before the board on the following April 4 in connection therewith. Extensions of the appearance date were made to May 2, June 6, and July 11 to enable appellant to review its books and answer the charge, and meetings between appellant and the trust's auditors for a like purpose were held on June 6, August 15 and August 30.

On September 27, 1979, appellant was again sent a letter notice, citing it to appear October 10 on the same charge. After its representatives attended on the latter date, an "Arbitration Award" was prepared by the board ordering appellant to pay to the trust fund $26,973.49 in fringe benefits and assessing it $839.75 in auditing fees. A copy of this award was served on appellant by registered mail on October 15, 1979. Thereafter on March 12, 1980, respondent filed its petition to confirm the award and on September 15, 1980, a judgment was made granting that request. This appeal followed. We affirm.

Only one finding of fact was made by the trial court, i.e., that the arbitration award was served on appellant on October 15, 1979. Substantial evidence supported that finding. If there were nothing more, the sole conclusion of law arrived at, i.e., that appellant was barred by Code of Civil Procedure section 1288[1] from moving to vacate the award, would be dispositive of the matter.

It is urged, however, that appellant had no notice the October 10 meeting was to be an arbitration proceeding, that it was given no oppor-

[1]"A petition to confirm an award shall be served and filed not later than four years after the date of service of a signed copy of the award on the petitioner. A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner."

tunity to be heard, that it was denied the right to counsel, and that what transpired was in violation of the collective bargaining agreement. Stated otherwise, it is contended what went on was not in fact an arbitration proceeding at all, or, if it was, appellant was not sufficiently apprised that was the case, in such fashion that its due process rights were abridged.

What is suggested is not wholly lacking in merit. Under article VII(b) of the collective bargaining agreement, entitled "Grievance Procedure," it is specified that: "There is hereby established ... the Los Angeles Joint Labor Relations Board, which shall have the authority to perform those functions set forth herein.

"(a) The Los Angeles Joint Labor Relations Board shall be composed of five (5) Contractor-Employer members and five (5) Union members, all of whom shall be active Members in good standing of the Local which they represent."

The article continues in pertinent part as follows: "Violations of the Agreement shall be under the jurisdiction of the Joint Labor Relations Board . . . .

"   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"It shall require a majority vote to carry any question before the Joint Labor Relations Board. . . .

"   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The decision of the Joint Labor Relations Board shall be final, conclusive and binding upon all parties to this Agreement.

"B. The Joint Labor Relations Boards shall have the power to assess the bonds of any party or parties to this Agreement where agreed upon by vote as above provided, for non-payment of wages or for violation of any article of this agreement together with all costs incurred, provided due notice was given the party charged.

"Any sums of money due by reason of assessments against bonds shall be deposited with and collected by the Union Roofers Administrative Fund, through the Designated Trustee, and disbursed as required.

"The Joint Labor Relations Boards shall have the right to summon, question and examine any party to this Agreement, or their representatives or agents in connection with any question which may arise over an alleged violation of any Article or provision of this Agreement. . . .

"      .    .    .    .    .    .    .    .    .    .    .    "    .    .    .

"E. All decisions of the Joint Labor Relations Board shall be made in writing with copies sent to the Contractor-Employer and the Union involved, not later than five (5) working days after the termination of the hearing.

"In the event of a deadlock in which a majority decision cannot be reached within five (5) working days either party may, within five (5) working days request Arbitration.

"F. If arbitration is requested, as a result of a deadlock of the Joint Labor Relations Board, there shall be established a three-man Arbitration Committee. . . .

"      .    .    .    .    .    .    .    .    .    .    .    "    .    .    .

"The Arbitration Committee shall hear and review any deadlocked grievance submitted to it and shall make final adjudication of the same by majority vote, which shall be final and binding upon all of the parties to this Agreement.

"      .    .    .    .    .    .    .    .    .    .    .    "    .    .    .

"The parties hereto specifically agree that the decision of the arbiters and/or the decision of the Joint Labor Relations Board may be enforced as though a judgment [sic] of a court of competent jurisdiction.

"      .    .    .    .    .    .    .    .    .    .    .    "    .    .    .

"(3) All grievance [sic] or disputes shall be referred to the Joint Labor Relations Boards by the CONTRACTOR or the UNION by sending written notice to the Secretary of the Joint Labor Relations Boards. Said notice shall contain the name of the CONTRACTOR and the UNION directly involved, the date and place of occurrence and a brief statement of the nature of the grievance or dispute.

"Upon receipt of such written notice, the Secretary of the Joint Labor Relations Board shall set the matter for hearing at the next meeting of the Joint Labor Relations Board. Copies of the alleged violation contained in the request for the Joint Labor Relations Boards hearing shall be mailed to all parties involved not less than ten (10) days prior to the established date of hearing."

A cursory perusal of these provisions would admit the possibility they are properly to be understood as permitting arbitration only in instances where the joint labor relations board cannot reach a majority decision on a given dispute. Thus it is set out that "In the event of a deadlock ... either party may ... request arbitration," an inference therefrom being that any other decision making process described is something other than arbitration.

The difficulty with the notion, however, lies precisely in the question what that something other would be if it is *not* arbitration. So, it is likewise specified that violations of the bargaining agreement "shall be under the jurisdiction" of the board, that the decision of the board "shall be final, conclusive and binding upon all parties" to the agreement, that the board "shall have the power to assess the bonds of any party" for violation of any article of the agreement, that it "shall have the right to summon, question and examine any party ... in connection with any question which may arise over an alleged violation" of the agreement, and that its decision "may be enforced as though a judgment of a court of competent jurisdiction."

These provisions, it seems to us, compel the conclusion that, while it is possible to interpret the agreement as appellant insists, to do so would result in an elevation of form over substance which would render actions by the board essentially meaningless.

And while in our own view the cited portions of the bargaining agreement might have been more clearly drawn and as they are drafted want greater precision respecting the issue under consideration, they, and the particular grievance structure they contemplate, are not without precedent. (See generally *Teamsters Local U. No. 30* v. *Helms Exp. Inc.* (3d Cir. 1979) 591 F.2d 211.)

In addition to the foregoing, we are persuaded appellant was adequately apprised, or should have been, what the procedure followed herein was intended to accomplish, and had ample opportunity as the

matter progressed to present its case and protect its interests. As set out earlier, initial notice of an alleged violation of the agreement was given in March of 1979; the hearing thereon was continued on four occasions, three at appellant's requests, over a period of several months; meetings with auditors and communication between the parties left no doubt concerning the question being inquired into; and appellant was advised well before the October 10 hearing exactly what was being claimed by respondent in terms of the violation claimed.

Under all the circumstances present, then, we cannot say appellant was deprived of due process nor that there was any valid basis upon which the arbitration award should have been vacated.

Accordingly, the judgment appealed from is affirmed.

Compton, J., and Beach, J., concurred.